THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEROY BROWN, Defendant-Appellant.

First District (6th Division)    No. 1—92—4073

Opinion filed March 24, 1995.—Modified on denial of rehearing November 9, 1995.

Rita Fry, Public Defender, of Chicago (Hugh Stevens, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Susan R. Schierl, and Adriana Gardella, Assistant State's Attorneys, of counsel), for the People.

JUSTICE ZWICK[1] delivered the opinion of the court:

Defendant, Leroy Brown, appeals from a jury verdict finding him guilty of aggravated criminal sexual assault and robbery. The trial court sentenced defendant to a total of 47 years in the penitentiary, to be served consecutively to a 90-year sentence imposed by an Indiana court on an unrelated conviction. The appellate court has jurisdiction pursuant to Supreme Court Rule 602 (134 Ill. 2d R. 602).

S.M. testified that she was sexually assaulted and robbed by the defendant at approximately 1 a.m. on June 4, 1990, after she left an el platform at 63rd and University and was at a nearby bus stop. She first had observed the defendant on the el platform, where he approached her and used foul language toward her, calling her a bitch. Defendant was approximately 5 feet 9 inches tall, 150 to 180 pounds and in his late thirties to early forties. He was carrying a duffel bag across his shoulder and he was wearing jeans, a dark ski jacket and gym shoes. He had a very full beard and a thick afro-style haircut. S.M. identified the defendant in court.

The ticket agent on duty at the el station on the morning of June 4, 1990, stated that he knew S.M. from high school and spoke with her briefly before she left the platform. He had observed a man on the platform who matched the general description of the defendant that morning. The man asked him for a free ride. The ticket agent refused the man's request and observed the man leave the platform immediately behind S.M.

---

[1]Although Justice Zwick was not a member of the panel originally assigned to this case, he has read the briefs, listened to the tape of oral argument, and has otherwise fully participated in the disposition of this case.

S.M. testified that she was approached by the defendant at a nearby bus stop shortly after leaving the el station. At that time, the defendant demanded that she give him her money. When she refused, the defendant struck her twice in the face and took the wallet from her purse which contained $400. The defendant then began yelling at her, telling her $400 was not enough and that he knew she had more money. The defendant then directed her toward an empty lot near the bus stop.

Once the two reached the empty lot, the defendant ordered S.M. to undress. When she hesitated, the defendant punched her in the stomach. At that time she observed what she believed to be a knife, four inches in length. The defendant told her that he was going to kill her, that all women are no good and that she deserved what was happening to her. She was forced to the ground and struck again in the face as she tried to resist.

S.M. testified that the defendant inserted his penis first into her vagina and then into her mouth. After unsuccessfully attempting anal intercourse, the defendant again inserted his penis inside her vagina.

When a train arrived at the el station, S.M. began screaming and the defendant jumped up and ran away without his bag. S.M. got up and ran naked, screaming and crying in the direction of the bus stop where she met two men who took her to a friend's house. From the house she called her boyfriend and the police. She testified that when she first looked in the mirror after the attack she noticed that she had suffered injuries to her face. She also observed scratches on her back, arms and feet.

Chicago police officer Robert McGuire testified that the following day, approximately 30 hours after the attack, he took S.M. on a tour of the crime area. At this time, S.M. first told police that she remembered that the man who raped her had a duffel bag and that he fled without this bag. At the scene of the attack, detectives found a black gym bag which she identified as the one carried by the offender. The bag contained clothing, papers, "girlie" magazines and an empty whiskey bottle.

Among the papers police found in the bag was a letter from Frederick Work, an Indiana attorney, to an individual named Gerald Bailey. Officer McGuire contacted both Indiana and Federal authorities regarding Gerald Bailey. He was sent a picture of Gerald Bailey which S.M. later identified as being the man who raped and robbed her.

Frederick Work testified that in February 1990, he represented Gerald Bailey in a matter pending in Lake County superior court in

Crown Point, Indiana. He identified the defendant as the person he knew as Gerald Bailey. Work stated that the letter found in the bag at the crime scene was from his office and was sent to notify the defendant to appear in the Lake County superior court on February 26, 1990. Attorney Joan Korros, who represented the county at those proceedings, also testified that the defendant was Gerald Bailey.

Also found in the duffel bag near the scene of the crime were letters from Travellers and Immigrants Aid of Chicago. The documents introduced a man named James Caldwell to various Chicago agencies which serve the homeless. Detective Richard Losik indicated that on March 28, 1990, he was assigned to the mass transit unit at O'Hare airport and that he had contact with a man named James Caldwell. He testified that the defendant was the man he knew as James Caldwell.

Rudy Barrera testified that he was employed by Amtrak's police department and was working during the early morning hours of July 21, 1990, at Union Station in Chicago. He found defendant trespassing after closing hours in the station and arrested the defendant for criminal trespass. Barrera stated that the defendant identified himself as Leroy Brown, but did not have any identification. Barrera turned the defendant over to the Chicago police for processing. While processing defendant on the criminal trespass charge, Chicago police discovered that the defendant had been named in an arrest warrant related to the attack on S.M.

The jury found the defendant guilty of robbery and aggravated criminal sexual assault. The State introduced evidence at sentencing that the defendant had previous convictions, one for manslaughter and two for child molesting. The State also introduced evidence that the defendant committed the attack on S.M. while out on bond in Indiana. The defendant had fled Indiana in the middle of a jury trial there and had been convicted *in absentia* and sentenced to a 90-year prison term. The State asked the court to impose an extended-term sentence due to the brutal and heinous nature of the crime.

The court sentenced defendant to 40 years in the Department of Corrections on the aggravated criminal sexual assault charge and seven years on the robbery charge, sentences to run consecutively. In addition, both sentences were to run consecutively to defendant's 90-year sentence which had been imposed by Indiana.

We first address defendant's arguments regarding the empty duffel bag found at the crime scene and the testimony of defendant's former attorney, Frederick Work. Defendant claims that the introduction of the "Gerald Bailey" letter found in the bag and Work's testimony violated his attorney-client privilege. Defendant also

argues that the introduction of the letter was unfairly prejudicial because it constituted "other crimes" evidence.

■ The attorney-client privilege has been defined as follows: (1) where legal advice of any kind is sought; (2) from a professional legal adviser in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal adviser; (8) except the protection be waived. (*People v. Williams* (1983), 97 Ill. 2d 252, 454 N.E.2d 220.) Illinois courts have held that the attorney-client privilege does not extend to the identity of the client unless the extension of the privilege is shown to be in the public interest or if it appears that the client will be prejudiced in "some substantial way" by the disclosure. (See *Cesena v. Du Page County* (1990), 201 Ill. App. 3d 96, 112, 558 N.E.2d 1378, *rev'd on other grounds* (1991), 145 Ill. 2d 32, 582 N.E.2d 177.) Moreover, matters a client intends to disclose to third parties who are not agents of either the attorney or the client are not treated as privileged. (*In re Himmel* (1988), 125 Ill. 2d 531, 542, 533 N.E.2d 790; *Cesena*, 201 Ill. App. 3d at 112.) In Indiana, the defendant appeared in open court represented by Work and used the name Gerald Bailey. By doing so, any privilege as to his identity and his relationship with Work were revealed to the public. That which is once made public is incapable of being secret again. "Wherever the matters communicated to the attorney are intended by the client to be made public or revealed to third persons, obviously the element of confidentiality is wanting." (E. Cleary, McCormick on Evidence § 91, at 333 (4th ed. 1992).) Therefore, any privilege which may have existed between the defendant and Work with regard to defendant's identity has been waived.

We similarly find no violation of the attorney-client privilege with respect to the use by the State of the "Gerald Bailey" letters found at the crime scene. First, factual communications by a lawyer to his client concerning logistical matters such as court dates are not considered privileged. (See E. Cleary, McCormick on Evidence § 90, at 331 (4th ed. 1992).) Such communications neither relate to legal advice nor concern confidential information. In addition, the defendant abandoned the letters when he fled from the scene. Under these facts, no claim of privilege can survive.

■ With regard to defendant's claim that Work's testimony and the "Gerald Bailey" letter are irrelevant, we disagree. Both Frederick Work's testimony and the Gerald Bailey letter are highly probative to the issue of identity of the defendant. The letter ties Gerald Bailey to the crime scene, and Work's testimony demonstrates that Gerald Bailey and the defendant are, in fact, one and the same

person. Indeed, without Work's testimony, the jury might have reasonably concluded that S.M. had misidentified the defendant and that someone named Gerald Bailey, and not Leroy Brown, had actually committed the assault.

The defendant argues that even if the letter was relevant to the trial proceedings, the court should not have allowed the letter into evidence because it was unduly prejudicial. Where the defendant's criminal conduct or alleged conduct not directly at issue is claimed by the State to be relevant, and when the defendant claims that such evidence is unfairly prejudicial, the trial court is given the latitude to allow or reject the evidence. In such a case, the trial court must weigh the probative value of the offered evidence against its likely prejudicial effect upon the jury. (*People v. White* (1993), 257 Ill. App. 3d 405, 416, 628 N.E.2d 1102.) The trial court's decision to admit such evidence will be reversed only upon a determination that its decision amounted to an abuse of discretion. *People v. Thingvold* (1991), 145 Ill. 2d 441, 452-53, 584 N.E.2d 89.

It is well established that the State may not admit evidence that the defendant was involved in other crimes or other "bad acts" merely to establish defendant's proclivity to commit the crime charged. (*People v. Illgen* (1991), 145 Ill. 2d 353, 364-65, 583 N.E.2d 515; *People v. McKibbins* (1983), 96 Ill. 2d 176, 182, 449 N.E.2d 821.) The State may, however, admit evidence of other offenses committed by the defendant if relevant for any other purpose. (*Illgen*, 145 Ill. 2d at 365; *White*, 257 Ill. App. 3d at 416.) Here, the fact that the defendant had appeared in court in Indiana using the name Gerald Bailey was relevant to prove his identity. The State did not admit the letter, as the defendant's argument suggests, merely to establish the defendant's proclivity to commit crime. The letter was used to prove that the defendant was the attacker who left his bag at the scene of the crime. Moreover, any resulting prejudice in admitting the evidence was slight, particularly in light of the fact that the jury was not told of the nature of the matter involving the defendant in the Indiana proceedings. Therefore, the defendant's arguments are rejected.

In similar arguments to the ones presented above, defendant complains that other documents found in the duffel bag, documents introducing James Caldwell to a public aid office and to an agency which serves Chicago's homeless community, were improperly admitted. Defendant claims that these documents, which appeared to have been prepared by Chicago's Travellers and Immigrants Aid Office, were not properly authenticated and were prejudicial.

■ Defendant's authentication issues are without merit because

the authenticity of the documents has no bearing on the issues presented to the jury. The documents were admitted solely to show that the name "James Caldwell" was associated with the bag. Officer Richard Losik later testified that this name was used by the defendant. Whether the letters were actually issued by the Travellers and Immigrants Aid Office or whether the Travellers and Immigrants Aid Office had actually referred the defendant to agencies serving the homeless was not at issue.

Defendant's argument that these letters were improperly admitted because they were evidence of "bad character and other crimes" is likewise without merit. These letters did not provide evidence of bad character or the commission of other crimes. The use of homeless services by a defendant is neither evidence of bad character nor of a proclivity to engage in illegal conduct.

■ Defendant next complains about the testimony of Officer Losik, who testified to having "contact" with the defendant on March 28, 1990. Losik also testified that the defendant was known to him as James Caldwell. Defendant asserts that Losik's testimony had the effect of implicating him in other misconduct unrelated to his arrest for the sexual assault. A review of the record, however, indicates that the State offered no evidence through Losik which indicated that the defendant had been involved in any type of misconduct. It was the defendant who brought out on cross-examination the fact that he had been arrested by Officer Losik. A party may not seek relief from error he himself has injected into the proceedings. See *Ervin v. Sears, Roebuck & Co.* (1976), 65 Ill. 2d 140, 144, 357 N.E.2d 500.

Defendant next argues that the trial court improperly allowed the State to introduce into evidence the fact that the duffel bag found at the scene of the crime contained pornographic magazines and an empty whiskey bottle, evidence which defendant claims was irrelevant and prejudicial. When asked about the contents of the bag, Officer Robert McGuire testified that the duffel bag found at the crime scene contained some clothing, "some girlie magazines," an empty whiskey bottle and miscellaneous papers. Before Officer McGuire testified, however, the defendant objected. Defendant now contends that the trial court improperly allowed the testimony regarding the whiskey bottle and the magazines.

■ It is necessary to examine the transcript to ascertain the specific objection raised by the defendant on this issue. The record shows the following exchange during direct examination of Officer McGuire:

"Q. [by the Prosecutor] Now, please tell the ladies and gentlemen of the jury in general terms what was contained within the duffel bag?

MR. LIPSON [Defendant's counsel]: Objection, Judge. If we may be heard on this?

(WHEREUPON, the following was had in open court, outside the hearing of the jury)

MR. LIPSON: Your Honor, if I may state my objection, there's been no testimony up to this point in time from [S.M.] or from anybody else that this bag was ever opened in her presence, that she—that this man ever put anything inside. There's been no evidence at all offered by the prosecutor that this bag was ever opened, just that there was a bag.

What's inside, I believe, is totally irrelevant to anything in this case. It was just a bag. There is nothing in there that would tie up anything that she said.

MR. GOODFRIEND [Prosecutor]: Judge, we've been through this on a motion *in limine,* but inside the bag were documents which are going to be traced back to the defendant's name and business that he had. So I think we've been through this already. I mean, there's documents.

THE COURT: I don't know if the objection is that he hasn't first said he opened the bag.

MR. LIPSON: That's not it. My objection is based on the fact that she never testified that this bag was ever opened in her presence.

* * *

Judge, also, from what I could tell so far, this bag that supposedly was tied to my client is lying in an open field for a day and a half before anybody recovers it as evidence."

It is well settled that an objection on specific grounds waives other grounds not specified. (*People v. Steidl* (1991), 142 Ill. 2d 204, 568 N.E.2d 837.) The defendant's objections at trial, at best, concerned: (1) the fact that a proper foundation had not been laid in that the officer who testified as to what was inside the bag did not first explain how he knew what was inside the bag; and (2) a proper chain of custody had not been established over the bag from the time the complainant saw the defendant with the bag until the bag was taken into evidence by the police. Because we find the defendant did not object with specificity to the effect of the whiskey bottle or magazines on his client's behalf at trial, these issues are waived. See *Enoch*, 122 Ill. 2d at 186.

■ Another issue raised by defendant for the first time on appeal concerns the fact that S.M. was permitted to testify before the jury that she viewed a lineup, 300 to 400 photographs and 40 to 50 people on the street, but did not identify anyone until seeing a picture of the defendant. Because this issue was not raised in the trial court, it is

also waived. (*Enoch*, 122 Ill. 2d at 186.) Moreover, we conclude that these issues do not rise to the level of being plain error. See *Enoch*, 122 Ill. 2d at 198-99.

■ Defendant next argues that the State improperly argued in closing to the jury that the defendant "left his possessions in that bag" and left "his possessions at the scene." S.M. testified, however, that the bag found at the scene had been carried by the defendant prior to and during the attack. Arguments and statements based upon the facts in evidence, or upon reasonable inferences drawn therefrom, are within the scope of proper closing argument. (*People v. Terry* (1984), 99 Ill. 2d 508, 517, 460 N.E.2d 746.) In light of S.M.'s testimony, the prosecutor's arguments that the defendant left his possessions at the scene were reasonably based upon facts in evidence and were proper.

Defendant next asserts that the State was permitted to improperly put before the jury the fact that he had been arrested at Union Station in Chicago in the early morning hours of July 21, 1990. Amtrak police officer Rudolph Barrera testified that he was working at Union Station during the early morning hours of July 21, 1990. On that date Barrera observed defendant in the main waiting area which was reserved for passengers. After defendant refused to leave the premises, Barrera placed the defendant under arrest for criminal trespass. A warrant for defendant's arrest issued in connection with the attack of S.M. was subsequently discovered by the Chicago police.

■ Both the State and the defendant cite *People v. Richardson* (1988), 123 Ill. 2d 322, 342, 528 N.E.2d 612, for the proposition that evidence of other crimes is not admissible merely to show how the investigation unfolded and how the defendant came into custody, yet the State fails to explain for what other purpose Officer Barrera's testimony was offered. Indeed, the State's only argument as to why this testimony was relevant was because it "served to explain the steps leading to defendant's arrest on the instant charges." This is precisely what *Richardson* prohibits. We find Barrera's testimony wholly unrelated to the issues properly presented at trial. The State's use of this testimony was clearly improper.

Nonetheless, here, as in *Richardson*, this testimony was no more than harmless error. We will not reverse a criminal defendant's conviction on the basis of such evidence unless it appears that justice has been denied or that a finding of guilt resulted from the error. (*Richardson*, 123 Ill. 2d at 344.) As the State correctly argues, the evidence which was properly before the jury overwhelmingly proves that the defendant committed the crimes with which he had been charged. Application of the harmless error rule is therefore appropriate.

Defendant also argues that the trial court improperly sentenced him to an extended-term sentence. The trial court indicated at sentencing that it was sentencing the defendant to an extended term "due to the evidence which I heard as pointed out by the State's Attorney in terms of a heinous behavior, exceptionally brutal behavior of the defendant acting upon the victim."

The offense of aggravated criminal sexual assault is a Class X felony for which the circuit court must impose a sentence of not less than 6 years and not more than 30 years. (720 ILCS 5/12—14(d) (West 1992); 730 ILCS 5/5—8—1(a)(3) (West 1992).) The defendant may be sentenced to a term longer than 30 years, however, under the extended-term provisions of the Unified Code of Corrections. Section 5—5—3.2 provides that a court may sentence a defendant to an extended-term sentence where he has been "convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (730 ILCS 5/5—5—3.2(b)(2) (West 1992).) Defendant argues that the trial court's sentencing under this provision was unsupported by the evidence.

The State argues that issues regarding the defendant's sentencing are waived because the defendant did not raise any objection at the sentencing hearing or in his post-trial motion. The State's argument is no longer viable, however, in light of the decision rendered by the supreme court in *People v. Lewis* (1994), 158 Ill. 2d 386, 634 N.E.2d 717. We will therefore address defendant's claim.

The defendant suggests that the "exceptional brutality" needed to order an extended-term sentence is not present under the facts of this case. He notes that physical trauma is common in forcible rape cases and directs us to *People v. Olesch* (1986), 143 Ill. App. 3d 577, 492 N.E.2d 1381. In *Olesch,* the victim was 16 years old, was taken off the street and was threatened with injury from a knife and blindfolded. She suffered physical injuries and was treated in an emergency room after the attack. The trial court relied upon the fact that the victim did not see a weapon and had not been beaten or "slapped about" in determining that the defendant had not displayed the "exceptional brutality" necessary under the statute. (*Olesch,* 143 Ill. App. 3d at 590-91.) The court determined that "the attainment of justice" required that the defendant's extended-term sentence be reduced. *Olesch,* 143 Ill. App. 3d at 591.

In contrast to the facts of *Olesch,* the defendant in this case repeatedly struck the victim and displayed toward her a viciousness of both a physical and psychological nature that was not present in the rape described in the *Olesch* opinion. He forced her naked and

barefoot into an area strewn with garbage and broken glass. All the while the defendant threatened to kill the victim, telling her that she deserved the suffering and humiliation she was being forced to endure. We agree that this is an exceptionally brutal, heinous act, indicative of wanton cruelty. We therefore conclude that the trial court's imposition of an extended-term sentence was within its sound discretion.

▮ Finally, defendant claims that the trial court cannot order his 47-year sentence be served consecutively to the 90-year term he was sentenced to serve in Indiana due to the provisions of section 5—8—4(c)(2) of the Unified Code of Corrections (730 ILCS 5/5—8—4(c)(2) (West 1992)). This section states that the aggregate of consecutive sentences may not exceed the sum of the maximum terms authorized under section 5—8—2 for the two most serious felonies involved. Defendant claims that the trial court's sentencing must be modified so that the 47-year sentence he received in the present case runs concurrently with the 90-year Indiana sentence.

In light of our supreme court's recent decision construing section 5—8—4(c)(2) in *People v. Tucker* (1995), 167 Ill. 2d 431, we agree that defendant's sentence must be modified. In *Tucker* the court wrote:

> "As the statute provides for the imposition of a consecutive sentence on a defendant already subject to a sentence, both sentences are 'involved' under the statutory scheme. Thus, the limitation on consecutive sentences articulated in section 5—8—4(c)(2) logically applies regardless of whether the consecutive sentences arise from separate incidents." (167 Ill. 2d at 436.)

We must therefore consider all sentences defendant is serving in considering whether his current sentence exceeds the limitations set by section 5—8—4(c)(2).

The record shows defendant's two most serious offenses are the aggravated criminal sexual assault committed in Illinois and a Class A child molestation offense committed in Indiana. Both offenses correspond to Class X offenses under section 5—8—2. (730 ILCS 5/5—8—2 (West 1992).) Only first-degree murder is a more serious crime under our extended-term sentencing scheme. A Class X offense carries a maximum term of 60 years. (730 ILCS 5/5—8—2 (West 1992).) Thus, the maximum sentence defendant can receive under section 5—8—4(c)(2) in Illinois is the sum of two Class X offenses, or 120 years.

Although defendant's aggregate sentence of 137 years exceeds the maximum allowed under section 5—8—4(c)(2) by 17 years, we do not agree with the defendant's position that his entire 47-year Il-

linois sentence must be made concurrent with his Indiana sentence in order to conform to the requirements of Illinois law. Nothing in section 5—8—4(c)(2) requires defendant's entire sentence to be served concurrently. In accordance with *Tucker,* we modify defendant's sentence so that 17 years are served concurrently with the remaining 30 years to be served consecutively to his Indiana sentence. We do so pursuant to our authority under Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366). In this way, defendant's sentence will not violate the provisions of section 5—8—4(c)(2) in that he will only be required to serve, at most, 120 years.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed as modified.

Affirmed as modified.

EGAN and RAKOWSKI, JJ., concur.