THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES TOPPS, Defendant-Appellant.

First District (3rd Division)   No. 1—95—4339

Opinion filed October 29, 1997.

State Appellate Defender's Office, of Chicago, and James Geis Law Office, of Orland Park, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Alan J. Spellberg, and Scott A. Herbert, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Defendant, Charles Topps, was convicted in a jury trial of aggravated arson and two counts of first degree murder on October 20, 1995. Defendant was sentenced to the Illinois Department of Corrections for natural life for the murders and 30 years' imprisonment, to run concurrently, for aggravated arson. On appeal, defendant argues that: (1) plain error occurred when the jury heard hearsay evidence and argument indicating that the nontestifying codefendant and another individual informed police that defendant perpetrated the crimes; (2) defendant was denied his sixth amendment right to effective assistance of counsel; and (3) the trial court erred by ignoring defendant's *pro se* posttrial motion alleging ineffective assistance of counsel.

BACKGROUND

On June 28, 1994, defendant gave a written statement to police, stating that on April 3, 1992, in Maywood, Illinois, while accompanied by codefendant, Arthur Eppinger, and an acquaintance, Dennis Moore, defendant gave $20 to an unknown person to purchase cocaine for him. The unidentified person never returned with defendant's

money or any cocaine. Subsequently, Moore offered to purchase the cocaine for defendant, and the three men proceeded to Moore's apartment. Defendant gave Moore $30 to purchase some cocaine in an upstairs apartment, and Moore left to do so after asking Topps and Eppinger to watch over his apartment. Moore failed to return, and Eppinger's subsequent attempt to locate Moore was unsuccessful. When Eppinger returned to defendant, he and defendant began ransacking Moore's apartment, and Eppinger suggested that defendant burn Moore's apartment. Defendant further recounted in his written statement that he told Eppinger to "go and light it" and that Eppinger subsequently lit a blanket on fire.

At approximately 6:40 p.m., the Maywood fire department received a call to respond to a fire at the apartment building. Two people died as a result of the fire. An expert in determining the causes of fires testified that the fire originated from Moore's unit and that it was started by someone who had ignited a flammable item in the apartment. A medical examiner also testified that the two deceased victims of the fire died from carbon monoxide poisoning and that the manner of death was homicide.

Betty Ringo, a tenant who lived directly across from Moore's apartment, testified that just before the fire she heard two men in the hallway arguing. She looked out of the peephole in her front door and observed two men in front of Moore's apartment. Angela Collins, another witness who had been visiting a friend in a nearby apartment, testified that she heard male voices arguing in the hallway about someone owing them money and stating that they were going to burn the building down if they were not repaid. Collins then opened the door, looked out into the hallway, and observed codefendant Eppinger yelling at the shut door to Moore's apartment. At that time, the building manager, Ernest Barlow, exited from his apartment, approached the two defendants, and told them both to leave the premises. Barlow further testified that he followed the two men to the front door of the building to make sure that they left. On his way back to his apartment, Barlow stated that the fire alarm went off. Tenant Betty Ringo testified that, upon hearing the fire alarm, she looked through the peephole in her door once again and observed flames emanating from Moore's apartment.

Sergeant Jesse Ingram, an investigator for the Maywood police department, was immediately dispatched to the scene of the fire. When he arrived, he spoke with fellow officer Chris Butler about the possible cause of the fire. During their discussion, Butler related an earlier conversation he had shared with Eppinger, who was still at the scene at that time. Ingram, who had known Eppinger for five

years, went to speak with Eppinger and subsequently radioed for assistance in his pursuit of Topps, whose direct involvement in the fire was suspected after Ingram's discussion with Eppinger. Barlow and Eppinger led Ingram to Topps' residence, where defendant was arrested.

Eppinger was acquitted after a bench trial that took place simultaneously with Topps' jury trial. On appeal of his convictions for murder and arson, Topps seeks remand for a new trial.

We affirm.

ANALYSIS

I

Defendant first contends that plain error occurred when the jury heard inadmissible hearsay evidence and argument informing it that the nontestifying codefendant and another person had told police that defendant was the wrongdoer. Specifically, defendant claims that, during Sergeant Ingram's testimony, the jury was told that Eppinger had informed Ingram that defendant was responsible for starting the fire. In addition, defendant asserts that, during closing argument, the State reminded the jury that the reason defendant became a suspect was because Eppinger told the police that defendant was the perpetrator. Defense counsel failed to object to Ingram's trial testimony and to the prosecutor's use of allegedly hearsay evidence in closing argument. The defense also failed to preserve this issue in a posttrial motion.

■ Generally, failure to make a timely objection at trial and to renew it in a posttrial motion constitutes a waiver of the right to raise the issue on appeal. *People v. Herrett*, 137 Ill. 2d 195, 209 (1990); *People v. Enoch*, 122 Ill. 2d 176, 190 (1988). Nonetheless, a limited exception to this rule exists in Supreme Court Rule 615(a), which provides that plain errors affecting substantial rights may be noticed on appeal, despite not being objected to at trial and raised in a posttrial motion. 134 Ill. 2d R. 615(a). While hearsay violations have been reviewed as plain error (*People v. Singletary*, 273 Ill. App. 3d 1076, 1084, 652 N.E.2d 1333, 1338 (1995); *People v. Furby*, 228 Ill. App. 3d 1, 9, 591 N.E.2d 533, 539 (1992)), the plain error rule is only invoked where the errors at trial denied the accused a fair and impartial trial or where the evidence is so closely balanced that an innocent person may have been convicted due to prejudice caused by the errors. *Herrett*, 137 Ill. 2d at 209-10; *People v. Carlson*, 79 Ill. 2d 564, 576-77 (1980).

■ Hearsay evidence includes testimony in court of a statement

made out of court, such statement being offered as an assertion to show the truth of matters asserted therein. See *People v. Simms*, 143 Ill. 2d 154, 173 (1991); *Singletary*, 273 Ill. App. 3d at 1081, 652 N.E.2d at 1336. A review of the trial record reveals that Ingram's testimony contained no hearsay violations. On the contrary, the testimony at issue was offered to establish the investigatory steps taken by the police in their pursuit of defendant and was not offered for the truth of the matters asserted. First, the portions of Ingram's testimony cited by defendant cannot be characterized as hearsay, since Ingram did not divulge actual statements made by the out-of-court declarant, Eppinger. Second, during Ingram's testimony, the prosecution specifically requested Ingram to refrain from discussing the substance of any conversations he had conducted with Eppinger, and Ingram consistently responded accordingly. The transcript of the direct examination of Ingram indicates that Ingram offered no hearsay evidence but, rather, properly testified to his investigatory procedures:

"Q. After you summoned the defendant Eppinger, did the defendant Eppinger have a conversation with you?

A. Yes, he did.

Q. Without going into the substance of the conversation that you had with the defendant Eppinger, what is the next thing that you did?

A. Attempted to locate another party, another individual.

Q. And who did you attempt to locate?

A. A subject some called *** Topps by the last name.
* * *

Q. And when you first made attempts to locate this person by the name of Topps, did you go anywhere or did you radio for assistance?

A. I radioed for assistance.
* * *

Q. What information did you give the officers at that time?

A. Not verbatim, but I gave information to a certain building description ***.
* * *

Q. All right, did you give the name of the suspect over the air as well?

A. Yes.

Q. And what name did you give?

A. Last name Topps.

Q. Did you give a description of him?

A. Yes, I did.
* * *

A. Subject missing some front teeth. Subject of a real soft nature ***.

\* \* \*

Q. \*\*\* [A]t that point where did you go?

A. Well, I made a gesture towards the front door where Detective Welch and Mr. Eppinger were near the front door asking to have Mr. Eppinger step inside to show us the location where the apartment of Mr. Topps was.

Q. Without going into the substance of what the defendant Eppinger may have said or done, what is the next thing that you did?

A. Made an attempt to knock on the door \*\*\*."

We find that the foregoing testimony falls within the rule stating that testimony by a police officer regarding investigatory procedures that reveals the occurrence of a conversation with a co-offender, but not its contents, is not hearsay. *People v. Pulliam*, 176 Ill. 2d 261, 273-74 (1997); *People v. Gacho*, 122 Ill. 2d 221, 248 (1988). Such testimony is admissible even if the jury could conclude that police began looking for defendant as a result of their conversation with nontestifying witnesses, "as long as the testimony does not gratuitously reveal the substance of [the nontestifying witnesses'] statements and so inform the jury that they told the police that the defendant was responsible for the crime." *People v. Henderson*, 142 Ill. 2d 258, 304 (1990); see also *People v. Johnson*, 116 Ill. 2d 13, 24 (1987).

In the case at bar, we find that the testimony at issue, as well as the closing argument complained of, did not reveal the substance of any conversations with Eppinger but, rather, remained within the ambit of proper testimony and argument. In our view, the cases relied upon by defendant on this issue are inapposite. Therefore, we hold that no error occurred in the course of Ingram's testimony.

## II

Defendant also argues that he was denied his sixth amendment right to effective assistance of counsel. Defendant bases this argument on several grounds, claiming that his attorney: (1) failed to present exculpatory evidence that he had promised to produce in his opening statement; (2) failed to impeach Angela Collins, whose damaging surprise testimony was presented for the first time at trial; (3) failed to make objections to Ingram's alleged hearsay testimony discussed in the section above; (4) damaged defendant's case by inviting additional alleged hearsay testimony during cross-examination of Ingram; and (5) failed to move for a mistrial or a jury instruction explaining why codefendant Eppinger was no longer involved in the case after the State rested its case in chief.

■ In order to establish that one was denied effective assistance of counsel, a defendant must show that counsel's representation fell

below an objective standard of reasonableness and that there is a reasonable probability that, "were it not for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Whitehead*, 169 Ill. 2d 355, 380 (1996), citing *People v. Albanese*, 104 Ill. 2d 504, 525 (1984). In emphasizing defendant's duty to show prejudice, Illinois courts have noted that the standard for judging a claim of ineffectiveness must be whether counsel's conduct so undermined the operation of the adversarial process that the trial cannot be relied upon as having achieved justice. *Albanese*, 104 Ill. 2d at 525, quoting *Strickland v. Washington*, 466 U.S. 668, 686, 80 L. Ed. 2d 674, 692-93, 104 S. Ct. 2052, 2064 (1984). Defendant argues that the facts alleged satisfy the aforementioned tests for a claim of ineffective assistance of counsel. We disagree.

■ With respect to defendant's argument based on his attorney's failure to produce promised exculpatory evidence, defendant specifically points to defense counsel's opening remarks that defendant would testify to his lack of culpability, that there would be testimony showing that defendant's statement to police was coerced, and that there would be evidence of someone else's motive for setting the fire based on insurance. The trial record, however, reveals that it was the defendant who changed his mind and chose not to take the stand after the prosecution rested its case. Defendant, therefore, cannot rightly attribute to counsel any damage caused by the unfulfilled opening statement concerning defendant's expected testimony. As to the issue of police coercion, defense counsel made repeated attempts to impeach officers on this subject. Although the officers consistently denied coercing defendant into writing his statement in a certain manner, defense counsel's impeachment efforts were conducted in good faith. See *People v. Goodloe*, 263 Ill. App. 3d 1060, 1076, 636 N.E.2d 1041, 1052 (1994) (counsel's representation not ineffective where attorney made good-faith attempts to introduce evidence promised in opening statement); see also *People v. Coleman*, 9 Ill. App. 3d 402, 407, 292 N.E.2d 483, 487 (1972). Defendant's similar contention that his attorney failed to explore the issue of an alternate motive based on insurance is also without merit. The record indicates that defense counsel did, indeed, bring up this issue more than once during cross-examination. Although the trial court at one point prohibited questioning along the line of insurance, thereby precluding defense counsel from further exploring the issue, we believe that counsel made the requisite good-faith effort to elicit relevant testimony.

■ Defendant also contends that his attorney erred by failing to put into evidence certain police reports that would have served to

impeach Angela Collins, whose testimony implicated both defendants and was not supported by any prior statement to the police or the parties. Collins, the child and sister of the two deceased victims of the apartment fire, was 9 years old at the time of the incident and 13 years old when she testified. Defense counsel objected during Collins' direct examination, and Eppinger's attorney established that Collins had never informed the police that she had heard the men in the hall threaten to start a fire, that she had never told police that she had heard the men demand any money, and that she had never given the police a description of or identified the defendants during the two years preceding trial. Eppinger's attorney moved for a mistrial, claiming surprise by Collins' inculpatory testimony, since her statements were absent from the pretrial discovery material. The trial court denied Eppinger's motion based on the fact that the prosecution alerted his counsel to Collins' testimony the day before she testified and the fact that Eppinger's attorney effectively impeached Collins during cross-examination in the bench trial portion of the proceedings. Topps' attorney was similarly unaware of Collins' expected testimony, and the court noted that defendant was particularly prejudiced by not having had the jury present during codefendant's counsel's effective impeachment of Collins. Rather than declare a mistrial, the court allowed defendant the opportunity to cure the prejudice by putting into evidence any police reports and testimony that would have established that Collins' statements had never been offered before trial. Defendant's attorney never took advantage of this opportunity, and defendant claims error therefrom.

It is our view that defense counsel may very well have decided upon a strategy to use Collins' direct testimony to support defendant's theory that Eppinger was to blame for the fire. Indeed, Collins testified that it was Eppinger whom she directly heard threatening to burn down the apartment building—an observation that defense counsel likely did not want to challenge. Although defendant may question the strategic value of electing to not put the police reports and Collins' testimony into evidence for impeachment purposes, we hold that defense counsel's inaction in this regard fell within the wide spectrum of defense tactics that Illinois courts have long considered to be an improper basis for supporting a claim of ineffective assistance of counsel. *People v. Guest*, 166 Ill. 2d 381, 394 (1995); *People v. Flores*, 128 Ill. 2d 66, 106 (1989); *People v. Hillenbrand*, 121 Ill. 2d 537, 548 (1988) ("mistakes in trial strategy or tactics or in judgment do not of themselves render the representation incompetent"); *People v. Madej*, 106 Ill. 2d 201, 214 (1985).

Defendant further argues that his attorney erred by failing to

object to the alleged hearsay testimony elicited from Sergeant Ingram by the prosecution. Since we have concluded that Ingram's testimony relating to Eppinger did not constitute hearsay and that no error occurred in allowing such testimony, we find that defense counsel could not have properly based objections to the testimony on grounds of hearsay.

■ Defendant also contends that his attorney prejudiced his case by inviting hearsay testimony during cross-examination of Ingram. In particular, defendant points to alleged hearsay testimony elicited from Ingram by defense counsel that included inculpatory statements from Eppinger and Barlow. Our review of the transcript leads us to conclude that the testimony did not contain hearsay. Assuming, *arguendo*, that Ingram's responses did include hearsay, we hold that defendant cannot properly seek review of this issue, since any such error was solicited by the defense. Illinois courts have long held that an accused cannot complain of the admission of testimony that was invited by the defendant's own tactics at trial. *People v. Scott*, 148 Ill. 2d 479, 531 (1992); *People v. Gacy*, 103 Ill. 2d 1, 74 (1984); *Ervin v. Sears, Roebuck & Co.*, 65 Ill. 2d 140, 144 (1976); *People v. Brown*, 275 Ill. App. 3d 1105, 1112, 657 N.E.2d 642, 647-48 (1995) (a party may not seek relief from error he himself has injected into the proceedings); *People v. Rodriguez*, 227 Ill. App. 3d 397, 408, 592 N.E.2d 18, 26 (1991). The alleged hearsay complained of by defendant was invited as a result of defense counsel's apparent strategy to show that Eppinger, perhaps in collusion with Barlow, attempted to place full blame on defendant. Once again, defendant's claim of ineffectiveness cannot be supported by a claim based on defense counsel's trial strategy. *People v. Guest*, 166 Ill. 2d 381, 394 (1995); *People v. Flores*, 128 Ill. 2d 66, 106 (1989); *People v. Hillenbrand*, 121 Ill. 2d 537, 548 (1988); *People v. Madej*, 106 Ill. 2d 201, 214 (1985).

■ Defendant's last contention of ineffective assistance of counsel is based on his attorney's failure to request a curative jury instruction following codefendant's acquittal. This argument also fails. We agree with the State that a proper jury instruction aimed at preventing jury bias against defendant after Eppinger's dismissal from the proceedings already had been given. Immediately after the prosecution rested its case, the trial court gave the following instruction:

> "At this time the defendant has an opportunity to produce any evidence, if he would like to, and he doesn't have to offer any evidence if he doesn't want to, and because you as the jury would only be deciding the case of Mr. Topps, there is no reason to have Mr. Eppinger and his lawyers in this courtroom, so I have let them leave the courtroom for this part of the proceeding. Any

defense or testimony they would have would be made to me because you would not be making any rulings for Mr. Eppinger." Considering that the jurors were not made aware of the fact that Eppinger had just been acquitted by the trial judge moments before they were brought back into the courtroom for defendant's case, we are convinced that this instruction adequately prevented any jury bias that otherwise may have developed against defendant. Therefore, defendant's claim that his attorney erred in failing to request such an instruction has no foundation.

## III

■ Lastly, defendant contends that the trial court erred in ignoring his *pro se* motion for a new trial based on deficient representation. This court held in *People v. Spicer*, 163 Ill. App. 3d 81, 93, 516 N.E.2d 491, 500 (1987), that where defendant is not denied effective assistance of counsel and there is no evidence that the trial court neglected defendant's claim, any error resulting from the trial court's failure to expressly rule on defendant's *pro se* motion is harmless and a remand for a hearing on that issue is unnecessary. Since we conclude that defendant was not denied effective assistance of counsel at trial and that there is no evidence that the trial court neglected defendant's matter, the holding in *Spicer* is dispositive of defendant's last contention in the case at bar. Accordingly, we affirm the decision of the trial court.

Affirmed.

CAHILL and LEAVITT, JJ., concur.