SECOND DIVISION

DECEMBER 21, 1999

1-98-3344

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

    ) Circuit Court 

Plaintiff-Appellee    ) of Cook County

    )

v.    ) Post Conviction

    )

CHARLES TOPPS,    ) The Honorable

    ) Frank Deboni,

Defendant-Appellant    ) Judge Presiding.

PRESIDING JUSTICE COUSINS delivered the opinion of the court.

A jury convicted the defendant of one count of aggravated arson and two counts of first degree murder.  The trial court sentenced him to 30 years' incarceration in the Illinois Department of Corrections for the arson and imposed the mandatory sentence of natural life for the two murders.  The defendant appealed to this court alleging various errors by the trial court as well as ineffective assistance of counsel.  We affirmed. 
People v. Topps
, 293 Ill. App. 3d 39, 687 N.E.2d 106 (1997).  Subsequently, Chrales Topps (the petitioner) filed 
pro
 
se
 for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 (West 1996)), for deprivation of his sixth amendment right to counsel.  He alleged ineffectiveness of trial counsel (on different grounds than those enumerated in his direct appeal) as well as ineffectiveness of appellate counsel.  The circuit court summarily dismissed the petition as frivolous and patently without merit.  The petitioner now appeals, arguing that the circuit court should have appointed counsel for him and allowed him to file an amended petition.

We affirm.

BACKGROUND

The petitioner, Charles Topps, and his co-defendant, Arthur Eppinger, were charged by indictment with aggravated arson and first degree murder.  The charges arose from a fire that killed two people in an apartment building at 306 North Fifth Avenue.  At trial, a fire investigator testified that the fire was deliberately set in apartment 7A, which belonged to Dennis Moore.

Moore testified that he and Eppinger met Topps on the evening of the fire and that Topps asked Eppinger to help him obtain some cocaine.  The three men located a drug dealer, but the dealer refused to sell to them due to Topps' loud, aggressive behavior.  Then they went to Moore's apartment and drank beer.  Moore recounted that Topps gave him $30 and asked him to try once more to find some drugs.  When he was unable to buy drugs from a dealer who lived in the building, Moore went around the west side of the city attempting to locate another source.  The apartment building was in flames when he returned.

In a statement to the police, Topps related that when Moore did not return with cocaine, he and Eppinger were enraged.  Topps ransacked the kitchen, emptied some drawers and cabinets and overturned a table.  Eppinger suggested that Topps burn the building down.  Topps then saw Eppinger attempting to light a blanket on fire, and he encouraged Eppinger to do so.  After the blanket had been ignited, the two men left the apartment.  The building manager, who had come because of the noise, escorted them out of the building.

Betty Ringo, a resident of the building, testified that shortly before the fire she heard two men arguing in the hallway.  When she looked outside, she saw the men outside of apartment 7A.  A few minutes later she heard the fire alarm and looked and saw flames emanating from that apartment.

Angela Collins, whose parents died in the fire, testified that on the evening in question she was visiting a friend in another apartment on the same floor of the building.  She heard two men in the hallway yelling that they would burn down the building if they didn't get their money.  She testified that she looked outside and saw the two men.  On cross-examination by Eppinger's attorney, however, she recanted much of this testimony.  

Eppinger was still at the scene of the crime when the police arrived.  After talking to Eppinger, detectives brought in Topps for questioning.  Topps gave a statement in which he admitted that he was in the apartment, but denied that he or Eppinger set the fire.  He took a polygraph test and was released.  Eppinger was also questioned and gave a statement.  

Two years later, State Police reopened the investigation.  Topps came in for questioning at their request.  He gave another statement, this time admitting that Eppinger started the fire and that he had encouraged him to do so.  The police then placed Topps under arrest.

Eppinger had a bench trial, and Topps had a jury trial.  The trials were simultaneous.  Prior to trial, both Topps and Eppinger moved to suppress their statements to the police.  After a hearing, the judge suppressed Eppinger's statement on the grounds that it was the product of coercion, but allowed Topps' statements.  The court acquitted Eppinger and the jury convicted Topps.  

During the interview for his presentencing report, Topps told the investigator that he had been treated for paranoid schizophrenia while in the army.  He said that over the years he had been prescribed various antipsychotic medications.  He claimed that he had heard voices since he was a child.  The trial court, after examining the report and hearing evidence in mitigation, imposed the mandatory sentence of natural life imprisonment for the two murders as well as a sentence of 30 years' imprisonment for the arson, to run concurrently.

Topps appealed to this court, contending that the trial court erred in admitting hearsay by Eppinger that implicated him and that he was denied effective assistance of counsel.  Topps argued that his counsel was deficient for, 
inter
 
alia
, not perfecting impeachment of Angela Collins, failing to introduce evidence promised in opening statement, and not requesting a curative instruction after the acquittal of Eppinger.  We affirmed the convictions. 
People v. Topps
, 293 Ill. App. 3d 39, 687 N.E.2d 106 (1997).

Topps then filed a 
pro
 
se
 petition for relief under the Post-Conviction Hearing Act (the Act) 725 ILCS 5/122-1 (West 1996).  The petition alleged that Topps’ trial counsel was ineffective for not requesting a fitness hearing and for not exploring an intoxication defense or tendering a lesser-included-

offense instruction.  It further alleged that appellate counsel was ineffective in not raising these issues on direct appeal.  The petition was heard by the same judge that presided over Topps’ trial.  Without holding an evidentiary hearing or appointing counsel, the judge summarily dismissed the petition as frivolous and patently without merit.  The court stated:

"I have read every single page of the petition.  I was the trial judge in that particular case.  It was a jury trial, and Mr. Topps was found guilty by a jury, and I read all of the allegations that-the wild allegations that he has made in this post-conviction petition, and I might add for the record, he was very complimentary to the State as well as to this Court.  Most of his concern was directed towards his attorney, who he claims did not do an adequate job in his representation.

I, with all due respect, disagree with what he has alleged.  They are wild allegations, not supported by any evidence, and I find his petition to be frivolous and patently without any merit whatsoever, so I am dismissing his petition for post-conviction relief."

Topps now appeals, arguing that the circuit court erred in finding that he did not sufficiently allege that he was denied effective assistance of trial and appellate counsel.  Topps contends that: (1) his appellate counsel was ineffective for not raising on appeal issues regarding his fitness to stand trial; (2) his trial counsel was ineffective for not requesting a fitness hearing; and (3) his trial counsel was ineffective for not pursuing an intoxication defense and failing to tender a lesser-included-offense instruction based on intoxication.

ANALYSIS

A proceeding under the Act is not a second appeal but is, rather, an action in the nature of a collateral attack on the original judgment.  
People v. Hawkins
, 181 Ill. 2d 41, 50, 690 N.E.2d 999, 1003 (1998).  Its purpose is to address alleged constitutional violations that were not and could not have been addressed on direct appeal.  
People v. Sanders
, 209 Ill. App. 3d 366, 373, 568 N.E.2d 200, 204 (1991).  The petitioner bears the ultimate burden of establishing that such violations occurred.  
People v. Seaberg
, 262 Ill. App. 3d 79, 81, 635 N.E.2d 126, 128-

29 (1994).

When a prisoner files a postconviction petition 
pro
 
se
, there is a three-stage process to evaluate the claim.  
People v. Gaultney
, 174 Ill. 2d 410, 418, 675 N.E.2d 102, 106 (1996).  At the first stage the judge examines the petition, the record and any supporting affidavits to see if the petition is frivolous and patently without merit.  
People v. DeSavieu
, 256 Ill. App. 3d 731, 733, 628 N.E.2d 1117, 1119 (1993).  At this stage, the petition need only provide a simple statement making out the gist of a constitutional claim.  
DeSavieu
, 256 Ill. App. 3d at 733, 628 N.E.2d at 1119.   It need only contain a limited amount of detail.  Legal arguments and citations to legal authority are not required. 
Gaultney
, 174 Ill. 2d at 418, 675 N.E.2d at 106. The court is not to accept any responsive pleadings from the State at this point.  
Gaultney
, 174 Ill. 2d at 418, 675 N.E.2d at 106.  All allegations not contradicted by the record are taken as true.  
People v. Coleman
, 183 Ill. 2d 366, 380-81, 701 N.E.2d 1063, 1071 (1998).  The petition's allegations must be supported by attached records or affidavits or other evidence, or the petition must say why such evidence is not attached.  
Gaultney
, 174 Ill. 2d at 418, 675 N.E.2d at 106.

If the judge determines that the allegations not contradicted by the record contain the gist of a constitutional claim, he or she dockets the matter for further consideration.  At this stage, the second stage, indigent defendants are appointed counsel and they may amend their petitions.  The State may then file a motion to dismiss.  Appeals from first-stage and second-stage dismissals are reviewed 
de
 
novo
.  
Coleman
, 183 Ill. 2d at 387-88, 701 N.E.2d at 1075; 
People v. Dortch
, 303 Ill. App. 3d 839, 841, 709 N.E.2d 280, 282 (1999).  This is because:

"The inquiry into whether a post-conviction petition contains sufficient allegations of constitutional deprivations does not require the circuit court to engage in any fact-finding or credibility determinations.  The Act contemplates that such determinations will be made at the evidentiary stage, not the dismissal stage, of the litigation.  Due to the elimination of all factual issues at the dismissal stage of the post-conviction proceeding, a motion to dismiss raises the sole issue of whether the petition being attacked is proper as a matter of law."  
Coleman
, 183 Ill. 2d at 385, 701 N.E.2d at 1074.

If the petition is not dismissed, it goes on to an evidentiary hearing, which is the third stage.  A third-stage denial is reviewed under a manifest error standard.  
Coleman
, 183 Ill. 2d at 384, 701 N.E.2d at 1073.

In the instant case, the judge dismissed the petition at the first stage.  He did not appoint counsel or allow Topps to file an amended petition.  Thus, plenary review is appropriate. 

Since the purpose of the Act is to address constitutional violations that were not and could not have been addressed on direct appeal (
Sanders
, 209 Ill. App. 3d at 373, 568 N.E.2d at 204), if an issue was raised and decided in the appeal, it is 
res judicata
, and if an issue could have been raised on direct appeal but was not, it is waived. 
People v. Franklin
, 167 Ill. 2d 1, 9, 656 N.E.2d 750, 758 (1995).  

The State points out that Topps did not raise on appeal either the issue of counsel’s failure to ask for a fitness hearing or his failure to explore defenses dealing with Topps' intoxication at the time of the fire.  Accordingly, the State argues, these issues have been waived.  Moreover, the State adds, any bases on which Topps argued in his direct appeal that his trial counsel was deficient have been resolved against him and are 
res
 
judicata
. See 
Topps
, 293 Ill. App. 3d 39, 687 N.E.2d 106.

Topps correctly notes that if a claim of ineffective assistance of counsel is based on matters outside the record, then it could not have been raised on appeal and, consequently, is not waived in a postconviction petition. 
People v. Burns
, 304 Ill. App. 3d 1, 11-12, 709 N.E.2d 672, 680 (1999).  Topps’ claims of mental illness, however, are in the record in the presentencing report and could have been raised on direct appeal.  His affidavits do not add any new information.  Accordingly, alleged errors relating to the failure to request a fitness hearing are waived.  

There are certain circumstances in which the waiver rule may be relaxed, such as when the waiver stems from incompetency of appointed appellate counsel.  
People v. Whitehead
, 169 Ill. 2d 355, 371, 662 N.E.2d 1304, 1311-12 (1996).  Topps argues that the alleged errors relating to the failure to request a fitness hearing or pursue an insanity defense should not be waived, because his appellate counsel was incompetent for not raising those issues.  We disagree.  

Although in the presentencing interview Topps claimed that he had been treated for a psychological illness many years prior to the trial, he said that at that time he was not in need of mental health treatment.  Aside from the presentencing report, the record does not indicate that Topps was unfit to stand trial.  Likewise, Topps' affidavits do not allege any additional facts beyond those in the presentencing report which support the conclusion that he was unfit to stand trial or that his appellate counsel was incompetent for failing to pursue this issue on appeal.  Even at the first stage, a 
pro
 
se
 postconviction petition's allegations must be supported either by the record or by affidavits (
Coleman
, 183 Ill. 2d at 381, 701 N.E.2d at 1071), or at least explain why supporting affidavits are not attached (
Gaultney
, 174 Ill. 2d at 418, 675 N.E.2d at 106).

"It is not incompetence for counsel to refrain from raising those issues which, in his judgment, are without merit, unless his appraisal of the merits is patently wrong." 
Sanders
, 209 Ill. App. 3d at 377, 568 N.E.2d at 207.  Topps has not alleged facts from which a trier of fact could conclude that appellate counsel's appraisal of the merits, based on the record it had to work with, was patently wrong.  The petition does not give us a basis to think that "the issue was so patently meritorious that the failure of appellate counsel to raise the issue on direct  appeal constitute[d] incompetence." 
People v. Frank
, 48 Ill. 2d 500, 505, 272 N.E.2d 25, 28 (1971).

The affidavits do, by contrast, allege facts about counsel’s failure to pursue an intoxication defense that do not appear in the record.  In his affidavits Topps claims that he told his attorney that he had been drinking and ingesting cocaine for most of the day, that he was so high when he was brought in that the police held him for three days so he would be sober enough to take a polygraph, and that the police took a blood sample when they questioned him.  He alleges that his attorney did not look into any of this.  Since these claims are not in the record, we hold that the issue of whether Topps’ attorney was ineffective in not pursuing an intoxication defense or offering a lesser-

included-offense instruction based on intoxication is not waived.

The defense of intoxication is rarely used, for the statute and the case law set a very difficult standard.  See generally A. Lyon, 
Affirmative Defenses in Illinois
, in Defending Illinois Criminal Cases §8.4 (Ill. Inst. For Cont. Legal Educ. 1996).  The effect of intoxication on criminal responsibility in Illinois is as follows:

"A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition either:

(a) Is so extreme as to suspend the power of reason and render him incapable of forming a specific intent which is an element of the offense; or

(b) Is involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." 720 ILCS 5/6-

3 (West 1996).

First degree murder requires a specific intent, and thus voluntary intoxication can be a defense.  If the standard relating to voluntary intoxication is met, then the offense may be reduced from first degree murder to an offense not requiring specific intent.  
People v. Cunningham
, 123 Ill. App. 2d 190, 209, 260 N.E.2d 10, 19 (1970). 

Topps contends that his counsel was ineffective for not exploring and pursuing an intoxication defense to first degree murder or at least tendering a lesser-included-offense instruction.  Furthermore, Topps argues, it appears from the record of the sentencing hearing that trial counsel was unaware that two first degree murders carry a mandatory natural life sentence if the death penalty is not imposed. 730 ILCS 5/5-8-1 (a)(1)(c)(ii) (West 1996). Had counsel known this he might have been more likely to offer a lesser-included-offense instruction. 

Failure to investigate an intoxication defense could, under the circumstances of a particular case, constitute ineffective assistance of counsel.  See 
People v. Popoca
, 245 Ill. App. 3d 948, 615 N.E.2d, 778 (1993).  Nevertheless, even if a 
pro
 
se
 postconviction petition standing alone adequately sets out the bare bones statement of a violation of a constitutional right, the court has authority to dismiss a petition as frivolous and patently without merit if the record sufficiently contradicts the allegations in the petition.  
Seaberg
, 262 Ill. App. 3d at 84, 635 N.E.2d at 131.  In other words, the court should make a determination whether the record would as a matter of law preclude a court from finding, after an evidentiary hearing, that the alleged constitutional violation occurred. 

The State contends that the record clearly contradicts the claim that trial counsel was ineffective in not pursuing an intoxication defense.  According to the State, Topps' statements to the police would have made it virtually impossible for an intoxication defense to succeed, or at least so difficult that it cannot have been unreasonable to eschew such a strategy.  The trial court, moreover, found the statements to be voluntary.  In view of these statements, the State argues that as a matter of law petitioner could not overcome the presumption that trial counsel's decision to forego an intoxication defense fell within the wide range of reasonable professional assistance (
Strickland v. Washington
, 466 U.S. 668, 690, 80 L. Ed. 2d 674, 695, 104 S. Ct. 2052, 2066 (1984); 
Burns
, 304 Ill. App. 3d at 11, 709 N.E.2d at 679).  We agree.

A person commits first degree murder if he or she performs acts that cause a death and knows that such acts create a strong possibility of death or great bodily harm to that individual or another.  720 ILCS 5/9-1(a)(2) (West 1996).  In order for an intoxication defense to be successful, one must show that one was unable to form the specific intent necessary for the crime. 720 ILCS 5/6-3 (West 1996).  In this case, Topps would have needed to show that he was so intoxicated at the time of the fire that he could not realize that setting a fire in the apartment building created a strong probability of death or great bodily harm to others.  In his second statement to the police, however, Topps said that "I knew no one was in apartment A7, but I knew that there were people in the building."  He also stated, "If Dennis Moore had lived in a house instead of an apartment, I wouldn't need any help.  I would have set the fire myself." These statements seem to establish that Topps had the requisite intent, since he knew that others were present.

Without ruling on whether these statements as a matter of law would have precluded an intoxication defense to first degree murder, we believe that they do preclude the claim that it was ineffective assistance of counsel not to utilize such a defense.  Compare  
People v. Martin
, 233 Ill. App. 3d 466, 468, 599 N.E.2d 205, 207 (1992) ("The details of his confession refute his claim that he acted without purpose or rationality. [Citation.] 

Accordingly, we find that any failure by his counsel to investigate an intoxication defense did not constitute ineffective assistance"). 

For similar reasons, it was not ineffective assistance for trial counsel to fail to meet the charge of aggravated arson with an intoxication defense.  Topps' confession clearly establishes the requisite level of intent for arson.  According to his statement he encouraged Eppinger to engage in conduct of such nature that Topps knew that fire would result. 
People v. Pearson
, 74 Ill. App. 2d 400, 220 N.E.2d 876 (1966).  Furthermore, the factor that aggravated the arson in this case, 
i.e.
, the fact that two people died (720 ILCS 5/20-1.1(a)(1)(a)(2) (West 1996); 
People v. Nino
, 279 Ill. App. 3d 1027, 1031, 665 N.E.2d 847, 850 (1996)), does not depend on the actor's intent.  Thus voluntary intoxication was not a viable defense to the charge of aggravated arson.  

While with the benefit of hindsight one might disagree with trial counsel's judgment that an intoxication defense to some or all of the charges would not be fruitful, in view of Topps' statements such a judgment could not fall outside the wide range of reasonable professional assistance.  Even if all of petitioner's allegations are taken as true, trial counsel's conclusion that an intoxication defense would not be helpful was reasonable.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

GORDON and McBRIDE, JJ., concur.